Joe ZUNDEL and Edwin Zundel, Plaintiffs and Respondents,

v.

FARMERS UNION GRAIN COMPANY OF EDGELEY, a corporation, Elmer Heim, and Clarence Heim, Defendants,

Farmers Union Grain Company of Edgeley, a corporation, Defendant and Appellant.

No. 7564.

Supreme Court of North Dakota.

Oct. 25, 1956.

Roy A. Holand, LaMoure, for appellant.

Theodore F. Kessel, LaMoure, for respondents.

Theodore F. Kessel, LaMoure, P. W. Lanier, Jr., Fargo, for plaintiffs.

James R. Jungroth, Jamestown, for defendants Elmer Heim and Clarence Heim.

SATHRE, Judge.

The plaintiffs bring this action for specific performance of an oral contract by the terms of which they allege that the defendant Farmers Union Grain Company of Edgeley, a corporation, agreed to sell and deliver possession to the plaintiffs a certain grain elevator building located on the railroad right of way in the town of Diesem, LaMoure County, North Dakota. The complaint alleges in substance that

on the 3rd day of July 1954 the defendant Farmers Union Grain Company by oral agreement sold to the plaintiff an elevator building known as the south elevator situated in the townsite of Diesem in the county of LaMoure, North Dakota for a consideration of $2,500 and on said date the plaintiffs issued a check for the said amount and received written receipt acknowledging payment of the purchase price. It is then alleged that the Grain Company violated the terms of the agreement and wrongfully refused to deliver possession of the elevator to the plaintiffs.

Judgment is then demanded that the defendant Farmers Union Grain Company be required to perform said oral agreement, accept the payment due under said terms thereof and to deliver possession of said elevator to the plaintiffs.

The defendant Farmers Union Grain Company answered and admitted that prior to July 15, 1954 it was the owner of the elevator building known as the south elevator at Diesem, North Dakota and that on July 3, 1954 it agreed to sell the elevator to the plaintiffs for the consideration of $2,500 and that plaintiffs delivered to it a check in payment of the purchase.

The answer further alleges that on or about the 8th day of July 1954 the plaintiffs stopped payment on the check for $2,500 which they had delivered to this defendant; that plaintiffs thereby rescinded their agreement for the purchase of said elevator, and that thereafter the defendant returned the check to the plaintiffs; that the defendant Grain Company sold the said south elevator to the defendants Elmer Heim and Clarence Heim and that they are now the owners of the elevator and in possession thereof. Judgment is then demanded for dismissal of plaintiffs' cause of action.

The defendants Elmer Heim and Clarence Heim interposed a separate answer alleging in substance the same facts alleged in the answer of Farmers Union Grain Company.

The action was tried in the district court, third judicial district, LaMoure County, North Dakota to the court without a jury. The trial court found for the plaintiffs and adjudged and decreed that upon payment by the plaintiffs to the Farmers Union Grain Company of the sum of $2,500 the said defendant was required to execute and deliver to the said plaintiffs a good and sufficient bill of sale to the said south elevator and that the defendants Elmer Heim and Clarence Heim surrender immediate possession of the elevator to the plaintiffs. From this judgment the defendant Farmers Union Grain Company appealed to this court and demanded a trial de novo.

There is very little dispute as to the basic facts in this action. On July 3, 1954, after previous negotiations between the plaintiffs and the defendant Farmers Union Grain Company, the said defendant sold to the plaintiffs the grain elevator located on the railroad right of way in the town of Diesem, LaMoure County, North Dakota at an agreed price of $2,500. On the same day the plaintiffs executed and delivered to the appellant grain company a check in the sum of $2,500 drawn on the National Bank of Jamestown, Jamestown, North Dakota and payable to the Farmers Union Grain Company of Edgeley, North Dakota. The check was introduced in evidence as plaintiffs' exhibit 1. At the time of the delivery of this check the defendant Grain Company delivered to the plaintiffs a receipt, plaintiffs' exhibit 2, which is as follows:

```
    "Customer Copy
    "Farmers Union Grain Co. of Edgeley
    "Diesem, North Dakota
                            "7-3-1954
"Sold to—Joe & Edwin Zundel
        1 Grain elevator at Diesem,
        South Elevator             $2500.00
"Rec'd Payment—
"Floyd McColm
"Walter Podoll, Sec'y            No. 476"
```

No bill of sale was delivered to the plaintiffs at that time because of the absence of the president of the Grain Company; but on his return on July 6, 1954, he signed the bill of sale and left it with the manager. It is not clear from the evidence whether the plaintiffs were to call for the bill of sale or whether the manager was to mail it to them.

There is no dispute as to the fact that at the time the sale was made to the plaintiffs there was stored in the elevator certain grain in which the Federal Government had an interest and that before delivery of the elevator could be made it would be necessary for the Grain Company to secure an order for removal of the grain. The Grain Company agreed to make shipment of the grain as soon as such order was received.

On July 7, 1954 the plaintiff Edwin Zundel went to the Bank at Jamestown, the bank on which the check for $2,500 was drawn and stopped payment thereof. On the evening of July 8th he met the secretary of the Grain Company and advised him that he had stopped payment of the check. As to the reason for stopping payment he testified as follows:

"Q. Will you tell the Court the conversation that transpired? A. Well, I told him that I was on my way to Fargo this morning, or the morning before, and I stopped at Jamestown and stopped payment on the check. And I told him that as long as we hadn't had a bill of sale, or no contract, and they had all the money, that they could monkey around as long as they wanted to getting the elevator empty. And I said as soon as they get the elevator empty we will make the check good."

At a meeting of the directors of the Grain Company on July 15, 1954, the defendants Elmer and Clarence Heim were present, and negotiations were had for sale of the elevator to them. On the following day, July 16, the defendant Grain Company agreed to sell the elevator to the defendants Heim Brothers for $2,500 and received a check of $500 as part payment. The defendant Clarence Heim testified that shortly before the directors meeting on July 15, Joe Zundel, one of the plaintiffs, told him that the plaintiffs had bought the elevator from the Grain Company, but that it was a wreck and that they paid too much for it.

The plaintiff Edwin Zundel testified that on July 21, 1954, he called the manager of the Grain Company and advised him that the check for $2,500 had been released, and that it would be paid upon presentation. The manager admitted receiving the telephone call, but denied that he was advised that the check was good and would be paid. On July 21, the check was returned to plaintiffs and was received by them the following day. Thereafter, and on July 30, 1954, the attorney for the plaintiffs sent to the manager of the Grain Company a bank draft in the sum of $2,500 and demanded delivery of possession of the elevator to the plaintiffs. It was received by the Grain Company but was returned immediately and received by the plaintiffs on July 31, 1954.

The question before us is whether upon the foregoing facts the plaintiffs are entitled to specific performance of the agreement of sale of the elevator in question. The written receipt issued by the Grain Company to the plaintiffs clearly shows that there was a completed sale of the elevator to them. The condition to be performed by the plaintiffs under the agreement was to pay in cash the purchase price of the elevator.

█ The plaintiffs issued their check in the sum of $2,500 in payment of the purchase price. They knew when they purchased the elevator and issued their check that government grain was stored in the elevator and that delivery could not be made until the grain was moved. They admitted that defendant grain company advised them that it would probably take two weeks to secure a shipping order from the Federal Government. Notwithstand-

ing they had full knowledge of these facts they stopped payment of their check. The check was issued on July 3rd, July 4th was on a Sunday and therefore under the law Monday the 5th was a holiday. Payment was stopped in the morning of July 7th, four days after it was issued, with two intervening holidays. There was no breach by the grain company of the contract of sale when the plaintiffs stopped payment of the check. The sale of the elevator under the agreement of the parties was to be a cash sale, and the defendant grain company accepted the check as the cash payment. When the plaintiffs stopped payment of the check they breached their agreement. The fact that the grain company did not return the check immediately is of no consequence since it was worthless after payment thereof was stopped. The grain company assumed that the plaintiffs had repudiated the sale and negotiated a sale of the elevator to the Heim Brothers. Under the circumstances we think the grain company had a right to assume that the plaintiffs had rescinded the sale. The grain company would have had the right to bring action against the plaintiffs for the amount of the purchase price, but this it did not choose to do. The plaintiffs claim to have advised the grain company by telephone on July 21st, fourteen days after the check was stopped that it would be paid on presentation. The grain company was under no obligation to accept the check at that time. It had entered into an agreement with the Heim Brothers to sell the elevator to them, and therefore returned plaintiffs' check. It likewise returned a bank draft sent to its manager on the 30th day of July by the attorney for the plaintiffs.

■ The plaintiffs argue that the defendant grain company by retaining the check after payment thereon had been stopped waived any breach by the plaintiffs. There is no merit to this argument. The plaintiffs had refused to perform their part of the agreement by stopping payment of their check. The grain company there-

fore had the right to sell the elevator to other parties.

Section 32–0408, NDRC 1943 provides:

"Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compelled specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

■ The plaintiffs breached their agreement when they stopped payment of their check and therefore they were not in position to demand specific performance under said Section 32–0408.

■ The plaintiffs argue that the defendant grain company was required to notify the plaintiffs before making resale of the elevator to other parties. In 78 C.J.S. Sales, § 428, page 42 it is stated:

"In some jurisdictions and under Uniform Sales Act § 60(3), it is not essential to the validity of a resale that notice of an intention to resell the goods be given by the seller to the original buyer, especially on the buyer's unqualified refusal to accept the goods. On the other hand, in other jurisdictions, in the absence of a statute providing otherwise, notice by the seller of his intention to resell is necessary, at least to create definite and conclusive evidence of the market value of the goods. Notice has been held unnecessary in the case of perishable goods, and, even if notice is necessary, failure to give notice is not fatal where the buyer is not prejudiced."

Sections 51–0153 and 51–0161, NDRC provide:

Section 5–0153:

"1. The seller of goods is deemed to be an unpaid seller within the meaning of this chapter:

"a. When the whole of the price has not been paid or tendered;

"b. When a bill of exchange or other negotiable instrument has been received as conditional payment, and the condition on which it was received has been broken by reason of the dishonor of the instrument, the insolvency of the buyer, or otherwise".

Section 51-0161:

"1. Where the goods are of a perishable nature, or where the seller expressly reserves the right of resale in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having a right of lien or having stopped the goods in transit may resell the goods. He shall not be liable thereafter to the original buyer upon the contract to sell or the sale or for any profit made by such resale, but may recover damages from the buyer for any loss occasioned by the breach of the contract or the sale.

"2. Where a resale is made, as authorized in this section, the buyer acquires a good title as against the original buyer.

\* \* \* \* \* \*

"4. It is not essential to the validity of a resale that notice of the time and place of such resale should be given by the seller to the original buyer." \* \*

In the instant case it is conceded by the plaintiffs that it was agreed by the parties that delivery of possession of the elevator could not be made until the government grain had been removed, and that the grain company had two weeks within which to remove the grain; yet, notwithstanding such agreement the plaintiffs stopped payment of their check four days after the agreement of sale was made. There was no breach by the grain company. The plaintiffs on the other hand had failed and refused to discharge their obligation under the sales agreement, and therefore the grain company had the right to assume that plaintiffs had repudiated the sale.

We conclude upon the facts and circumstances and the law applicable thereto that the plaintiffs are not entitled to specific performance by the defendant grain company of the agreement of sale here involved.

The judgment of the district court is reversed and the case dismissed.

BURKE, C. J., and MORRIS, JOHNSON and GRIMSON, JJ., concur.